UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BRANDON SCOTT LAVERGNE (#424229)

VERSUS                                      CIVIL ACTION

N. BURL CAIN, ET AL                         NUMBER 13-233-JJB-SCR

## NOTICE

   Please take notice that the attached Magistrate Judge's Report
has been filed with the Clerk of the U. S. District Court.

   In accordance with 28 U.S.C. § 636(b)(1), you have 14 days
after being served with the attached report to file written
objections to the proposed findings of fact, conclusions of law,
and recommendations set forth therein.  Failure to file written
objections to the proposed findings, conclusions and
recommendations within 14 days after being served will bar you,
except upon grounds of plain error, from attacking on appeal the
unobjected-to proposed factual findings and legal conclusions
accepted by the District Court.

   ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE
WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, May 12, 2014.


                          STEPHEN C. RIEDLINGER
                          UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


BRANDON SCOTT LAVERGNE (#424229)

VERSUS                                          CIVIL ACTION

N. BURL CAIN, ET AL                             NUMBER 13-233-JJB-SCR


**<u>MAGISTRATE JUDGE'S REPORT</u>**

Before the court are the plaintiff's Motion for Summary
Judgment and the Defendants' Motion for Summary Judgment. Record
document numbers 31 and 34, respectively. Defendants opposed the
plaintiff's motion for summary judgment.[1] Plaintiff filed a reply.[2]
Plaintiff opposed the defendants' motion for summary judgment.[3]
Defendants filed a reply.[4] Plaintiff also filed a supplemental

---

[1] Record document number 32.

[2] Record document number 33.

[3] Record document numbers 35 - 38. Plaintiff addressed claims
in his motion for summary judgment and in his opposition to the
defendants' motion for summary judgment which were not raised in
the complaint. Considering the many motions filed by the
plaintiff, it is clear that the plaintiff knows how to file a
motion, including a motion for leave to amend a complaint. See,
e.g. record document numbers 40, 42 and 43. Plaintiff's motion for
summary judgment and his opposition to the defendants' motion for
summary judgment shall not be treated as an amendment to the
complaint.

[4] Record document number 39.

supporting memorandum.[5]

Pro se plaintiff, an inmate confined at Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Warden Angie Norwood, Warden Darrell Vannoy and Warden Kenneth Norris[6]. Plaintiff alleged that the defendants were deliberately indifferent to his serious medical needs in violation of his constitutional rights.

Plaintiff moved for summary judgment relying on copies of three letters. Plaintiff also relied on copies of his medical records in his reply.[7]

Defendants moved for summary judgment relying on a Statement of Undisputed Facts, the affidavits of Warden Vannoy, Warden Norwood, Wardeb Norris and Dr. Jason Collins, copies of the plaintiff's personal property inventory sheets, copies of correspondence to and from Carmichael's Infusion Therapy & Medical Equipment, copies of insurance billing statements, and copies of the plaintiff's medical records.

## I. Factual Allegations

Plaintiff alleged that prior to his incarceration he was

---

[5] Record document number 49.

[6] This defendant was identified as Ken Norse in the complaint.

[7] Record document number 33.

diagnosed with sleep apnea and was prescribed a Continuous Positive Airway Pressure ("CPAP") machine. Plaintiff alleged that upon his incarceration at LSP on August 17, 2012, he was assigned to solitary confinement where his CPAP machine was not permitted.

Plaintiff alleged that he wrote a letter to the medical department inquiring about his CPAP machine. Plaintiff alleged that he received a response which stated that a new CPAP machine had been ordered.

Plaintiff alleged that on September 20, 2012, he filed an emergency Administrative Remedy Procedure ("ARP") with Department of Corrections Headquarters regarding his CPAP machine. Plaintiff alleged that ARP went unanswered.

Plaintiff alleged that in September 2012 he spoke to Warden Norwood who told him his CPAP machine was no longer at the state penitentiary. Plaintiff alleged that Warden Norwood later conceded that the CPAP machine had been placed in storage.

Plaintiff alleged that on February 19, 2013, he filed another emergency ARP with the Department of Corrections Headquarters. Plaintiff alleged that he did not receive a response to his ARP.

Plaintiff alleged that in May 2013, Dr. Collins told him that he was not receiving medical treatment because Warden Vannoy and Warden Norwood did not want an extension cord running to his cell. Plaintiff alleged that extension cords are routinely provided to inmates to operate shaving clippers.

Plaintiff alleged that Warden Norwood told him that his CPAP machine was a rental unit and was returned. Plaintiff alleged that Warden Norwood refused to provide written proof that the CPAP machine was returned.

Plaintiff alleged that other inmates are allowed to use extension cords to power medical devices. Plaintiff alleged that he is being denied the use of a CPAP machine solely based of his housing assignment.

## II. Applicable Law and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. Supporting affidavits must set forth facts which would be admissible in evidence. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Rule 56(c). Speculation, unsupported assertions, and conclusory allegations are inadequate to defeat a motion for summary judgment. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 660 (5th Cir. 2012). The court need only consider cited materials, but it may consider other materials in the record. Rule 56(c)(1)(3).

### B. Qualified Immunity

Defendants argued that they are entitled to qualified immunity

because their conduct did not violate any of the plaintiff's clearly established constitutional or statutory rights of which a reasonable person would have known.

A state official sued in his individual capacity for damages may assert a qualified immunity defense. *Procunier v. Navarette*, 434 U.S. 555, 561, 98 S.Ct. 855, 859 (1978). This immunity is defeated if the official violated clearly established statutory or constitutional rights, of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). In assessing the applicability of a qualified immunity defense, the court must first determine whether the plaintiff has asserted a violation of a clearly established right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789 (1991). If the court determines that there was a violation of a right secured by the Constitution, then it must determine whether the defendant could have reasonably thought his actions were consistent with the rights he is alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987). The protections afforded by the qualified immunity defense turn on the "objective legal reasonableness" of the defendant's conduct examined by reference to clearly established law. *Id.*, at 639, 107 S.Ct. at 3038. The court does not ascertain solely whether the law was settled at the time of the defendant's conduct, but rather, when measured by an objective standard, a reasonable officer would

5

have known that his conduct was illegal.  Even if a defendant's conduct actually violates a plaintiff's constitutional right, the defendant is entitled to qualified immunity if the conduct was objectively reasonable. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272 (5th Cir. 1992), *citing Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990); *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989); *Matherne v. Wilson*, 851 F.2d 752 (5th Cir. 1988).

### C. Deliberate Indifference

A prison official may be held liable under the Eighth Amendment for acting with deliberate indifference to an inmate's health or safety only if he knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Id*.

The deliberate indifference standard is "an extremely high standard to meet*.*" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001).  The Fifth Circuit has declined to find deliberate indifference where an official "*should have*" inferred a risk posed to an inmate, requiring proof that the official "*did* draw such an inference." *Adames*, 331 F.3d at 514;

*see also Farmer*, 511 U.S. at 838, 114 S.Ct. 1970; *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc). Nevertheless, an inmate does not have to produce direct evidence of an official's knowledge about the risk; he may rely on circumstantial evidence to demonstrate such knowledge. *See Farmer*, 511 U.S. at 842, 114 S.Ct. 1970; *Adames*, 331 F.3d at 512. For example, an inmate can prove the requisite knowledge by showing that conduct or occurrences were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past" such that officials had subjective knowledge of the complained risk. *See Farmer*, 511 U.S. at 842-43, 114 S.Ct. 1970 (internal quotation marks omitted); *Adames*, 331 F.3d at 512.

### D. Analysis

The summary judgment evidence described the plaintiff' medical assessment and treatment. On December 12, 2011, prior to his incarceration at LSP, the plaintiff was evaluated by Dr. Matthew Abraham for complaints of snoring and breathing pauses during the night.[8] Plaintiff was found to have symptoms consistent with obstructive sleep apnea syndrome.[9] Plaintiff was scheduled for a

---

[8] Record document number 34-5, p. 10, attachments to affidavit Dr. Jason Collins.

[9] *Id*. at 11.

split-night sleep study.[10]

On January 13, 2012, the plaintiff underwent a titration night study for obstructive sleep apnea syndrome.[11] Plaintiff maintained a normal sinus rhythm without significant arrhythmias.[12] Plaintiff was titrated with continuous positive airway pressure and had significant improvement in continuity in sleep and elimination of significant desaturations at pressures of 13cm of pressure and above.[13] Plaintiff was diagnosed with obstructive sleep apnea syndrome.[14] Dr. Abraham recommended continuous positive airway pressure at 16cm of pressure.[15]

On August 17, 2012, he was examined by Dr. Randy Lavespere for his intake evaluation.[16] Plaintiff's history of sleep apnea was noted.[17] Plaintiff's overall medical evaluation was unremarkable and his vital signs were all in the normal range.[18]

On September 5, 2012, the plaintiff was examined at the

---

[10] *Id.*

[11] *Id.* at 12.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 13.

[16] *Id.* at 15.

[17] *Id.*

[18] *Id.* at 2, affidavit Dr. Jason Collins.

Physician's Clinic for follow up on blood pressure evaluation.[19] Plaintiff's sleep apnea was noted and the examining physician indicated he would get approval for a CPAP machine.[20]

On September 10, 2012, the plaintiff filed a Health Care Request Form seeking access to a CPAP machine.[21] Plaintiff was observed on the yard walking without difficulty or showing any signs of distress.[22] Physical examination was unremarkable.[23] Plaintiff's complaint was referred to a doctor for review.[24] A notation was made on the form that "the situation is being evaluated by the Medical Director."[25]

On September 12, 2012, Dr. Collins referred the plaintiff for an emergency mental health consultation to be evaluated for complaints of sleep apnea and the need for a CPAP machine.[26] In addition, the plaintiff was referred for an ear, nose and throat ("ENT") consultation to be evaluated for the type, degree and need

---

[19] *Id.* at 16.

[20] *Id.*

[21] *Id.* at 17.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.* at 18, 20.

for sleep apnea treatment.[27]

On September 21, 2012, the plaintiff was evaluated during a psychiatric consultation.[28] The psychiatrist indicated that he agreed that the plaintiff should undergo an evaluation by an ENT for Obstructive Sleep Apnea ("OSA") and recommended battery powered CPAP machine if clinically indicated.[29] The psychiatrist recommended that no extension cord be permitted in the plaintiff's cell due to potential danger for self harm.[30] The ENT evaluation on September 14, 2014, noted the sleep apnea diagnosis and the need for a repeat evaluation.[31]

On November 26, 2012, the plaintiff submitted a Health Care Request Form complaining that he was experiencing sleep issues, blood in his stool and a problem with a tooth.[32] Physical examination showed no signs of distress, trauma or swelling in the mouth.[33]

On December 7, 2012, the plaintiff underwent an ENT evaluation through the Louisiana State University Health Sciences Center

---

[27] *Id.* at 20.

[28] *Id.* at 21.

[29] *Id.*

[30] *Id.*

[31] *Id.* at 24.

[32] *Id.* at 28.

[33] *Id.*

Telemedicine Program.[34]

On January 21, 2013, the plaintiff filed a Health Care Request Form complaining about an ingrown hair and difficulty sleeping at night.[35] Physical examination revealed no signs of trauma, swelling or drainage and the plaintiff's vital signs were normal.[36] Plaintiff was instructed to keep his scheduled appointment.[37]

On January 29, 2013, the plaintiff was examined at the R.E. Barrow, Jr. Treatment Center Physician's Clinic for a followup appointment for right fifth finger contraction and sleep apnea.[38] Physical examination showed normal vital signs and hemorrhoids, which were treated.[39]

On February 25, 2013, the plaintiff was examined at the R.E. Barrow, Jr. Treatment Center Physician's Clinic for a followup appointment for sleep apnea, folliculitis, hemorrhoids and the results of the telemedicine appointment.[40] The ENT notes were not

---

[34] *Id.* at 26, 27.

[35] *Id.* at 29.

[36] *Id.*

[37] *Id.*

[38] *Id.* at 30.

[39] *Id.*

[40] *Id.* at 31.

available.[41]  A notation in the chart stated "pt c/o's daytime sleepy, reports of snoring/stopping.  9-5-12 note → battery powered CPAP, (ordered)."[42]

On March 6, 2013, the plaintiff filed a Health Care Request Form for complaints that he was on a hunger strike secondary to wanting a CPAP machine.[43]  Physical examination showed the plaintiff's vital signs were normal, the plaintiff was ambulatory, spoke without difficulty and no distress was noted.[44]

On March 25, 2013, the plaintiff was examined by Dr. Randy Lavespere at the R.E. Barrow, Jr. Treatment Center Physician's Clinic for a followup appointment for sleep apnea, ENT, piles and folliculitis.[45]  Plaintiff complained of increased daytime naps.[46] A notation in the chart stated, "Spoke to medical director this am - 'unless sleep study ordered by Judge that confirmed OSA, ø sleep apnea machine and or mouth piece would be ordered.'"[47]

On June 19, 2013, the plaintiff filed a Health Care Request Form complaining that he could not sleep at night and that when he

---

[41] *Id.*

[42] *Id.*

[43] *Id.* at 32.

[44] *Id.*

[45] *Id.* at 33.

[46] *Id.*

[47] *Id.*

did sleep, he could not get any rest because of sleep apnea.[48] Plaintiff had to be wakened for a physical examination.[49] Plaintiff complained that he gets three to six hours of sleep each night and voiced no other medical complaints.[50] Plaintiff was found to be in no distress and his complaint was referred to a doctor for review.[51]

On July 9, 2013, the plaintiff was examined again by Dr. Lavespere at the R.E. Barrow, Jr. Treatment Center Physician's Clinic for a followup appointment for sleep apnea and folliculitis.[52] Plaintiff's vital signs were normal.[53] The doctor noted the plaintiff's report of his pending federal law suit and difficulty sleeping. A notation was made: "Await decision on OSA machine."[54]

On July 20, 2013, the plaintiff filed a Health Care Request Form complaining of shortness of breath and a sore throat.[55]

---

[48] *Id.* at 34.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 35.

[53] *Id.*

[54] *Id.*

[55] *Id.* at 36.

Plaintiff reported no nausea, vomiting or dizziness.[56]  Plaintiff's vital signs were normal and he had no fever.[57]  Plaintiff's throat was clear of pustules, no redness or swelling were visualized.[58] Plaintiff voiced no other medical complaints.[59]

On July 21, 2013, the plaintiff filed a Health Care Request Form complaining that he could not breathe, he had a sore throat, a headache and body aches and thought he had a fever.[60]  Plaintiff's throat was not red, and no swelling or congestion was noted.[61]

A careful and through review of the plaintiff's medical records showed that LSP medical personnel have repeatedly considered and evaluated the plaintiff's ongoing complaints of sleep apnea in order to  provide hin with reasonable treatment.[62] There is no evidence that the plaintiff has developed a physical malady, serious health problem, or any form of heart difficulty because of sleep apnea.[63]

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.* at 37.

[61] *Id.*

[62] Record document number 34-5, p. 9, ¶ 25, affidavit Dr. Jason Collins.

[63] *Id.* at ¶ 26.

The summary judgment evidence showed that Warden Vannoy was not involved in the plaintiff's medical treatment and did not discuss the plaintiff's medical treatment with the plaintiff's treating physicians.[64] The summary judgment evidence showed that Warden Vannoy did not discuss with Dr. Collins any safety or security concerns regarding the use of an extension cord in the plaintiff's cell.[65] The summary judgment evidence showed that Warden Vannoy did not discuss the plaintiff's CPAP machine with Dr. Collins.[66]

The summary judgment evidence showed that Warden Norwood asked Dr. Collins to verify the plaintiff's diagnosis of sleep apnea and to evaluate whether a CPAP machine was medically necessary.[67]

The summary judgment evidence showed that prior to May 17, 2013, Lt. Col. Norris was an assistant warden at the treatment center and was responsible for personnel issues.[68] The summary judgment evidence showed that Lt. Col. Norris was not involved in the plaintiff's evaluation or medical treatment.[69]

There is no evidence in the record that the defendants were

---

[64] Record document number 34-3, p. 2, ¶ 4.

[65] *Id.* at ¶ 5.

[66] *Id.* at ¶ 6.

[67] Record document 34-4, p. 3, ¶ 9.

[68] Record document number 34-6, p. 2, ¶ 3.

[69] *Id.* at ¶ 4.

aware of facts from which the inference could be drawn that a substantial risk of serious harm to the plaintiff existed, and that the defendants also drew the inference that a substantial risk of serious harm existed. Furthermore, even assuming that such a risk existed and the defendants knew about it, there is no genuine dispute that the plaintiff had reasonable access to medical evaluation and treatment by qualified medical providers, and that the plaintiff repeatedly availed himself of such services.

## Conclusion

In response to the defendants' summary judgment motion, the plaintiff offered only conclusory assertions and failed to point to summary judgment evidence sufficient to create a genuinely disputed issue of material fact. Because the plaintiff has identified no genuine dispute as to any material fact, summary judgment for the defendants is appropriate.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the plaintiff's Motion for Summary Judgment be denied, that the Defendants' Motion for Summary Judgment be granted, and that this action be dismissed.

Baton Rouge, Louisiana, May 12, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE